DECISION. *Page 2 
{¶ 1} Jeffrey Kahn appeals his conviction for driving under the influence of alcohol.[1] For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} On January 20, 2006, Norwood police officer Timothy Buchanon observed Kahn exceeding the posted speed limit on Montgomery Road in Norwood. Buchanon stopped Kahn, and upon approaching Kahn's car, Buchanon detected a strong odor of alcohol. Based on his observations, Buchanon suspected that Kahn had been driving under the influence of alcohol. He administered a series of field-sobriety tests, and as a result of Kahn's performance on the tests, Buchanon arrested him and transported him to the Norwood Police Department. While at the police department, Kahn submitted to a breath-alcohol test. The test indicated that Kahn had a blood-alcohol content of 0.223 grams per 210 liters of breath.
 {¶ 3} Kahn was charged with operating a motor vehicle under the influence of alcohol ("OMVI"), speeding, and failure to control. He filed a motion seeking to suppress the results of the field tests and the breath-alcohol test. After a hearing on the motion, the trial court denied it. Kahn pleaded no contest to the offenses and was found guilty by the trial court.
 {¶ 4} In his sole assignment of error, Kahn now asserts that the trial court erred when it overruled his motion to suppress the results of his breath test.
 {¶ 5} Our review of the trial court's denial of the motion to suppress presents a mixed question of fact and law.[2] We must accept the trial court's findings *Page 3 
of fact if they are supported by competent and credible evidence.[3]
Then we must conduct a de novo review to determine if the trial court properly applied the law to those facts.[4]
 {¶ 6} In his motion to suppress, Kahn recited a litany of ways in which the city had potentially not complied with administrative regulations that govern field-sobriety tests and breath-alcohol tests.[5] "[T]o require a hearing on a motion to *Page 4 
suppress evidence, the [defendant] must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided."[6] Although this motion was, at best, an unfocused shotgun motion, motions with similar language have been held to contain the requisite particularity to satisfy Shindler and to warrant hearings on the motions.[7] So in this case, once Kahn had satisfied his burden of giving notice of the issues to be determined at the hearing, the burden shifted to the city to prove that it had substantially complied with the regulations.[8]
 {¶ 7} At issue in this case is not whether the city had to prove substantial compliance but the degree of specificity with which it had to prove compliance. Kahn argues that because the city did not present evidence of its compliance with eight aspects of the applicable administrative regulations, it did not prove substantial compliance with the regulations. This is the approach that is commonly advanced in OMVI motions to suppress: the defendant essentially regurgitates the administrative code and then waits for the police officer to forget to testify about one of the aspects of compliance.
 {¶ 8} We are persuaded to follow the approach taken by the Twelfth Appellate District. That court has held "that in order to require the state to respond specifically and particularly to issues raised in a motion, an accused must raise issues that can be supported by facts, either known or discovered, that are specific to the issues raised. Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations *Page 5 
have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight."[9]
 {¶ 9} Unlike the "gotcha" approach suggested by Kahn, the Twelfth Appellate District's approach advances the purpose of a motion to suppress — to determine whether the evidence that the city seeks to use against a defendant has been illegally obtained.[10] Further, as noted by the Twelfth Appellate District, the emphasis is properly placed on the discovery process during which the defendant has an opportunity to determine whether the state has failed to comply with a regulation.[11] The Fifth Appellate District has echoed this emphasis on discovery: "In order to support a motion to suppress, with particular facts that would put the state on notice of the areas to be challenged, a defendant must first complete due and diligent discovery, on all issues which he or she intends to challenge, in the motion to suppress."[12] That Kahn did not attempt to discover factual support for his motion is obvious — according to the record, his motion to suppress and request for discovery were served on the prosecutor on the same day. And according to Kahn's motion, he did not even know whether the instrument that was used to test his breath-alcohol level "was a BAC DataMaster, BAC DataMaster CDM, or Intoxilyzer Model 5000 Series 66, or 68 EN." Short of Kahn's own observations during his test, it is unlikely that he had any factual support for the allegations in his motion.
 {¶ 10} We thus adopt the Twelfth Appellate District's approach and apply it to the case before us. During the hearing, Buchanon testified about the field-sobriety tests and the administration of the breath-alcohol test. With respect to the breath-alcohol *Page 6 
test, Buchanon stated that he was a certified senior operator, that the BAC Datamaster machine had been properly calibrated, that he had a record of the calibration, that his radio was turned off during the test, and that he followed the operational checklist for the BAC Datamaster in administering Kahn's test. Given the general, factless nature of Kahn's motion, the city needed only to present general evidence of its compliance with the administrative regulations. Kahn did not take the opportunity on cross-examination to challenge more specifically Buchanon's testimony. Buchanon's testimony clearly demonstrated that the city had substantially complied with those regulations that ensured that the test instrument was working properly and those that ensured that the test was administered correctly. We conclude that the trial court did not err when it overruled Kahn's motion to suppress.
 {¶ 11} The trial court's judgment is, accordingly, affirmed.
Judgment affirmed.
HILDEBRANDT, P.J., and HENDON, J., concur.
[1] Although Kahn has appealed his convictions for speeding and failure to control, his appellate brief only addresses the driving-under-the-influence conviction.
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8.
[3] Id.
[4] Id.
[5] We quote in full the paragraph in which Kahn cited the failures in the city's proof:
"Defendant has not been shown, nor can the State establish, a foundation to prove that the machine or instrument analyzing Defendant's drug and/or alcohol level was authorized in accordance within the manner required by OAC 3701-53-01, OAC 3701-53-02, OAC 3701-53-03, OAC 3701-53-04. Further, the State has not shown Defendant, nor can it establish a foundation, to show than an instrument check was performed by a senior operator on the breath testing instrument and a radio frequency interference (RFI) check was performed no less frequently than once very [sic] seven days in accordance with the appropriate instrument checklist * * *. Or, that the breath testing instrument was checked using an instrument check solution containing ethyl alcohol approved by the Director of Health. Specifically, the document purporting to show approval by the Director of Health is not a certified copy of the "original" document, nor has anyone involved in the prosecution of Defendant ever seen an original of the certificate alleging the Director's approval. If the State possesses some document purporting to be an "approval" certificate, the document that the State possesses is a copy of the copy and none of the State's witnesses can testify that they have ever compared it with the original document signed by the Director for the Ohio Department of Health. And finally, none of the State's witnesses possess actual knowledge of whether the instrument check solution has ever been tested by the Ohio Department of Health to verify the amount of ethanol in the solution. Defendant further states that the State has not, and cannot, establish a foundation to show that the instrument check required by the OAC was at or within five one-thousandths (.005) grams per two hundred ten liters of the target value for that instrument check solution; that the instrument check solution was not used more than three months after its date of first use; that the instrument check solution was not used after the manufacturer's expiration date or more than three years after its date of manufacture, notwithstanding the manufacturer's expiration date; that the instrument was checked for RFI using a hand-held radio normally used by the law enforcement agency that arrested Defendant, specifically, the radio that was used operates on a different wave length/band than those radios normally used by the arresting police agency; that there was an instrument check performed, in accordance with paragraphs (A) — (C) of Section 3701-53-04 of the OAC, when a new evidential breath testing instrument was put into service or the last time the instrument was returned after service or maintenance or repairs, before the instrument was used to test subjects; that the calibration/instrument check solution was kept under refrigeration after first use and when it wasn't being used, and that the solution container was retained for reference until the calibration solution was discarded; that the results of instrument checks, and records of maintenance and repairs have been retained for a period of not less than three years in accordance with paragraph (A) of rule 3701-53-01 of the OAC; and, that the operational manual provided by the instrument's manufacturer is on file in the area where the breath tests are conducted, pursuant to rule 3701-53-01 of the OAC."
[6] State v. Shindler, 70 Ohio St.3d 54, 1994-Ohio-952,636 N.E.2d 319, syllabus.
[7] See State v. Embry, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324;State v. Nicholson, 12th Dist. No. CA2003-10-106, 2004-Ohio-6666.
[8] Xenia v. Wallace (1988), 37 Ohio St.3d 216, 219,524 N.E.2d 889.
[9] Embry, supra, at hi 29. See, also, Nicholson, supra, discretionary appeal not allowed, 105 Ohio St.3d 1518, 2005-Ohio-1880,826 N.E.2d 315.
[10] See, generally, State v. French, 72 Ohio St.3d 446, 448,1995-Ohio-32, 650 N.E.2d 887.
[11] Embry, supra, at ¶ 29.
[12] See State v. Neuhoff (1997), 119 Ohio App.3d 501, 506,695 N.E.2d 825. *Page 1