OPINION *Page 2 
{¶ 1} Appellant, Michael L. Barnett, appeals his conviction in the Portage County Municipal Court on a no contest plea to operating a vehicle while intoxicated and failure to obey a traffic control device. At issue is whether the results of field sobriety tests should have been suppressed and whether appellant was prejudiced by ineffective assistance of counsel. For the reasons that follow, we affirm.
 {¶ 2} On April 8, 2006, at about 1:00 a.m., Officer Andrew Lumpkins of the Aurora Police Department observed appellant, who was driving a Chevrolet Avalanche truck, make an illegal left-hand turn from State Route 43 onto State Route 306. A posted sign at the intersection indicates, "no left turn," and the traffic light indicates that all traffic must turn right onto Route 306.
 {¶ 3} Off. Lumpkins then followed appellant driving northbound on Route 306, and observed appellant veer his truck six inches to the right of the white fog line at the edge of the road. The officer activated his overhead lights, and, upon approaching appellant, asked to see his driver's license. Appellant fumbled through other papers in his wallet before locating his license. At that time the officer smelled alcohol coming from appellant's person. The officer asked appellant if he had been drinking alcohol, and appellant said he had had two drinks. The officer asked appellant to exit his vehicle to take field sobriety tests.
 {¶ 4} Off. Lumpkins testified he successfully completed training in DUI interdiction in 2003. He obtained field sobriety test training according to National Highway Traffic Safety Administration ("NHTSA") standards. He successfully completed this training, and is certified to perform field sobriety testing in Ohio.
 {¶ 5} After appellant exited his vehicle, another officer at the scene Off. Kalk administered the portable breath test to appellant. The trial court subsequently suppressed the results of that test. Thereafter, Off. Lumpkins administered the horizontal gaze nystagmus ("HGN") test to appellant. The court also suppressed the results of this test. *Page 3 
 {¶ 6} Off. Lumpkins then conducted the one-leg stand test. The test was administered on the roadside. The road was level and straight. In describing the procedures he follows in administering this test, the officer testified he tells the defendant to stand with his feet together and hands to the side, and to remain in this position during the instruction phase. He tells the defendant to lift either foot about six inches above the ground; point that toe while looking at it; keep his hands to his side; and count up to thirty or until he tells the defendant to stop.
 {¶ 7} The officer testified that he demonstrated this entire test to appellant, and that he understood his instructions. He said the point of this test is to determine whether the defendant is able to perform the test without putting his foot down while counting and to maintain his balance without swaying.
 {¶ 8} Off. Lumpkins testified that during appellant's performance of the test, he put his foot down once and raised his hands more than six inches to balance himself. He thus had two deviations from proper performance. The officer testified the test was administered pursuant to his training and in compliance with NHTSA standards. He testified appellant's performance indicated he was under the influence of alcohol.
 {¶ 9} The officer next administered the walk and turn test at the same location. He used the white fog line on the edge of the road to administer the test. He gave appellant enough room to take the required number of steps. He told appellant he was to put his right foot in front of his left foot, heel touching toe, with his hands down at his side. The officer told him to stay in that position during the instruction phase and to not move until he told appellant to do so. The officer told appellant to take nine steps while keeping on the white line, heel to toe, keeping his hands at his side, looking at his toes, *Page 4 
and counting out loud each step, one to nine. On the ninth step, he told appellant to turn on that foot and to repeat the test, taking nine steps back. The officer demonstrated the starting position, several steps, and the pivot turn. He asked appellant if he understood the instructions and appellant said he did.
 {¶ 10} Off. Lumpkins testified the point of this test is to determine if a defendant is able to touch heel to toe on each step while staying on the line, counting out loud, and performing the proper turn. He said he administered this test according to his training and in compliance with NHTSA standards.
 {¶ 11} Appellant deviated from the instructions twice, first, by stepping off the line and, second, by not making the proper pivot turn.
 {¶ 12} Off. Lumpkins testified that, based on his experience and his observation of appellant, his driving, and his performance on the field sobriety tests, he was of the opinion that appellant was under the influence of alcohol. As a result, he arrested appellant. The officer cited him for operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and failure to obey a traffic control device, in violation of R.C. 4511.12(A).
 {¶ 13} On May 24, 2006, appellant moved to suppress the evidence concerning the field sobriety tests. The only argument appellant made in his motion concerning these tests was that they were not conducted in "strict compliance" with NHTSA procedures. Following a hearing on the motion, the trial court granted the motion with respect to the HGN test, finding that the lights from the officer's cruiser affected appellant's ability to perform the test. The court also prohibited the state from referring to the results of the portable breath test at trial. The court denied the motion with *Page 5 
respect to the one-leg stand and walk and turn tests, finding these tests were performed in substantial compliance with NHTSA standards.
 {¶ 14} The case was set for trial on October 31, 2006. On that date appellant's counsel advised the court he had previously presented a jury demand to the clerk of court for filing, but it was not on the docket. Appellant's counsel requested a jury trial and a continuance, both of which were denied. After a recess appellant pleaded no contest to both charges. The court sentenced appellant to 180 days in jail, to be suspended in full, and fined appellant $1,000, suspending $750 of the fine. Appellant appeals, asserting two assignments of error. For his first assignment of error, appellant asserts:
 {¶ 15} "THE TRIAL COURT ERRED WHEN IT DENIED, PURSUANT TO DEFENDANT'S MOTION, SUPPRESSION OF EVIDENCE RELEVANT TO THE FIELD SOBRIETY TEST AND TEST RESULTS OF THE ONE-LEG-STAND AND THE WALK AND TURN ADMINISTERED TO THE DEFENDANT-APPELLANT AT THE TIME OF HIS DETENTION AND ARREST FOR OVI."
 {¶ 16} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. During a hearing on a motion to suppress, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual issues and determine the credibility of the witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. An appellate court reviewing a ruling on a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. Accepting these facts as true, the *Page 6 
appellate court reviews the trial court's legal determinations de novo.State v. Djisheff, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, at ¶ 19.
 {¶ 17} Initially, we note that appellant has incorrectly stated the standard to be applied in determining whether field sobriety tests have been properly administered. He cites State v. Mayl, 106 Ohio St.3d 207,2005-Ohio-4629, for the proposition that the substantial compliance standard set forth at R.C. 4511.19(D)(4)(b) only applies to errors in administering the tests which are de minimus or minor procedural errors. However, the limitation of the substantial compliance standard to minor errors applies only to violations of the Ohio Health Department's regulations with reference to testing of blood and urine for the presence of alcohol. The court in Mayl held: "To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial-compliance standard set forth in [State v.] Plumber [(1986), 22 Ohio St.3d 292, 294] to excusing only errors that are clearly de minimus. Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as `minor procedural deviations.'" Id. at ¶ 49.
 {¶ 18} In State v. Brown, 166 Ohio App.3d 638, 2006-Ohio-1172, this court held that under amended R.C. 4511.19, effective April 9, 2003, an arresting officer is no longer required to administer field sobriety tests in strict compliance with testing standards for the test results to be admissible. Rather, only substantial compliance is required. This court did not limit the application of the substantial compliance standard to de minimus violations of NHTSA standards. *Page 7 
 {¶ 19} Appellant argues the state failed to comply with this court's holding in Brown by not introducing the NHTSA manual. However,Brown did not require the state to introduce the manual to sustain its burden. This court in Brown held:
 {¶ 20} "* * * In [the state's] response to appellant's motion to suppress, appellee [the state] conceded that Trooper Golias failed to make a conclusory affirmation that the tests were administered in compliance with the NHTSA manual * * *.
 {¶ 21} "* * * Although appellee introduced testimony of Trooper Golias as to which tests were conducted and how they were administered, it failed to produce any evidence to prove that the tests were conducted in a standardized manner as provided by the NHTSA, and did not admit the manual. Trooper Golias's testimony that he conducted the field sobriety tests in conformity with the manner and procedures with which he was taught is not the same as testifying that he administered the tests in substantial compliance with the guidelines set forth in the NHTSA manual. * * *" Id. at ¶ 24-25.
 {¶ 22} The state may demonstrate substantial compliance with the NHTSA standards "through competent testimony and/or introducing the applicable portions of the NHTSA manual." Djisheff, supra, at ¶ 21.
 {¶ 23} While the NHTSA manual may be introduced into evidence, substantial compliance can also be shown by witness testimony with respect to the NHTSA standards and the officer's actions in conformity with the standards. State v. May, 11th Dist. No. 2005-A-0011,2006-Ohio-3406, ¶ 30-34; State v. Perl, 11th Dist. No. 2006-L-082,2006-Ohio-6100, at ¶ 12-13. Likewise, in State v. Nickelson (July 20, 2001), 6th Dist. No. H-00-036, 2001 Ohio App. LEXIS 3261, the Sixth Appellate District held: *Page 8 
 {¶ 24} "[The state] did not carry this burden at the hearing. While appellee introduced testimony of officers as to which tests were conducted and how they were conducted, it did not introduce any evidence to prove that the tests were conducted in a standardized manner as provided by the [NHTSA]. No witness testified as to these guidelines, and the manual itself was not admitted. Because appellee did not prove that the field sobriety tests were conducted in accordance with the manual, the results of the field sobriety tests should have been suppressed." Id. at *10.
 {¶ 25} Thus, contrary to appellant's argument, Ohio courts have not held that the state must introduce the NHTSA manual in each case. Evidence of the NHTSA procedures, either by witness testimony or the manual itself, is sufficient.
 {¶ 26} In the case sub judice, Off. Lumpkins testified concerning his training in administering field sobriety tests according to NHTSA standards. He testified he successfully completed this training, and that he is certified to administer these tests in the state of Ohio. He testified concerning the NHTSA procedures with respect to each test, and that he administered the tests in compliance with them. Accordingly, we discern no error in the state's failure to introduce the NHTSA manual.
 {¶ 27} It must be noted that appellant failed to object to the state's failure to introduce the NHTSA manual. A reviewing court will not consider questions that could have been, but were not, presented before the court whose judgment is sought to be reversed. 4 Ohio Jurisprudence 3d, Appellate Review, Sec. 125. In State v. Awan (1986),22 Ohio St.3d 120, the Supreme Court held that a party's failure to raise at the trial court level the issue of the constitutionality of a statute, or the manner in which a statute is applied, waives the issue where the issue was apparent at the time of trial. By *Page 9 
failing to object to the state's failure to introduce the manual and further by failing to introduce it himself, we hold that appellant waived any error in this regard.
 {¶ 28} Next, we note that appellant failed to provide any specific facts or law in support of his motion to suppress the results of his field sobriety tests. In City of Norwood v. Kahn, 1st Dist. Nos. C-060497, C-060498, C-060499, 2007-Ohio-2799, the First Appellate District held that an accused's failure to provide any specificity in his motion to suppress relieved the state of the duty to specifically address the litany of regulatory violations he asserts in his motion.
 {¶ 29} In Kahn the defendant's motion to suppress recited numerous ways in which the city had potentially violated administrative regulations regarding field sobriety tests. The First District, citingState v. Shindler, 70 Ohio St.3d 54, 1994-Ohio-452, syllabus, held that to require a hearing on a motion to suppress evidence, the defendant must state the motion's factual and legal bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided.
 {¶ 30} The court in Kahn held that only after the defendant satisfied his burden of giving notice of the issues to be determined at the hearing does the burden shift to the city to prove it had substantially complied with the regulations.
 {¶ 31} In Kahn, like here, the defendant argued that because the city did not present evidence of its compliance with several regulations, it did not prove substantial compliance with the regulations. The court inKahn held that in order to require the state to respond specifically to issues raised in a motion to suppress, the defendant must raise issues that can be supported by facts that are specific to the issues raised. The court held: *Page 10 
 {¶ 32} "Unless an accused either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific * * * regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight.
 {¶ 33} "* * *
 {¶ 34} "Given the general, factless nature of Kahn's motion, the city needed only to present general evidence of its compliance with the administrative regulations. Kahn did not take the opportunity on cross-examination to challenge more specifically [the officer's] testimony. * * *" Id. at ¶ 8-10.
 {¶ 35} Here, appellant's motion to suppress contained no specific factual allegations and no legal bases in support. It was apparent that appellant obtained no factual basis in discovery or on cross-examination in support of his allegations. Appellant did not even present the type of general list of potential violations in his motion that the court inKahn found to be wanting. He simply made the conclusory statement that the officer failed to comply with the NHTSA manual. Thus, because appellant failed to specify in his motion or adduce on cross-examination the NHSTA standards he now argues were violated, we hold Off. Lumpkins' general testimony that his testing procedures complied with the NHSTA manual was sufficient to overcome appellant's motion to suppress. Appellant's failure to attempt to discover factual support for his motion to suppress or to cross-examine the officer relating to the officer's compliance with the NHTSA manual relieved the state of any burden to respond to appellant's allegations with greater specificity. *Page 11 
 {¶ 36} For the first time on appeal, appellant in his appellate brief outlines a series of alleged violations by Off. Lumpkins of the NHTSA standards, which, according to appellant, demonstrates that the officer failed to substantially comply with the NHTSA manual. He attached sections of the manual to his appellate brief in support. However, by our judgment entry, dated March 12, 2007, the appendix attached to appellant's brief, which includes sections of the NHTSA manual, was stricken from the record. Thus, the only evidence in the record concerning the NHTSA standards is the testimony of Off. Lumpkins. Because appellant never cross-examined the officer at the suppression hearing concerning whether he followed the specific procedural requirements appellant now alleges were violated and never introduced the NHTSA manual into the evidence, the record does not support appellant's argument that the officer violated these requirements.
 {¶ 37} We note that each procedure allegedly violated is minor and technical in nature, and would not necessarily have been mentioned by the officer in his direct testimony concerning the NHTSA standards he followed, particularly since they were not mentioned in appellant's motion to suppress.
 {¶ 38} Finally, if appellant meant to challenge the alleged failure to follow these procedures, he was required to do so in his motion or during the suppression hearing. His failure to do so waives the argument on appeal. Awan, supra; Kahn, supra.
 {¶ 39} With respect to the one-leg stand test, appellant argues the officer: (1) failed to inform appellant not to perform the test until told to begin; (2) failed to ask appellant if he understood the instructions; (3) failed to inform appellant to raise one leg and to keep his arms to his side; (4) failed to instruct appellant to raise one foot and *Page 12 
continue counting; (5) failed to demonstrate the test; and (6) failed to record the clues or failings in appellant's performance. However, at the suppression hearing appellant failed to ask the officer concerning these items. There is thus no evidence in the record that the officer failed to perform them.
 {¶ 40} In fact, Off. Lumpkins testified at the suppression hearing that: (1) he asked appellant if he understood the instructions; (2) instructed appellant to raise either leg and to keep his arms at his side; (3) instructed appellant to pick his foot up and count to thirty; and (4) demonstrated the test for appellant.
 {¶ 41} The record also reveals that Off. Lumpkins administered this test on the roadside, and that the road was straight and level. Appellant argued that because the officer agreed there is a slight grade on the road for rain runoff purposes, the road was not level. The officer testified, however, that this grade was less than one per cent and so the road was essentially straight and level.
 {¶ 42} While the officer testified it was raining, there is no evidence in the record that this test must be performed under dry conditions. There was no evidence introduced that rain would interfere with a driver's ability to perform this test.
 {¶ 43} Further, the record does not reveal the officer was required to inquire whether appellant had any leg injuries or if, in fact, he had any. Because there is no evidence that appellant had previously sustained any leg injuries, his argument that such injuries might have affected the test results is speculative at best.
 {¶ 44} With respect to the walk and turn test, appellant argues that Off. Lumpkins failed to: (1) ask appellant if he understood the directions or (2) tell appellant once he started, he should not stop until the test was completed. At the suppression hearing *Page 13 
appellant never asked the officer these questions. There is no evidence in the record that the officer failed to perform these tasks, but we note the officer asked appellant if he understood the instructions and appellant stated he did. There is no evidence that this test must be performed on dry ground or that the officer was required to ask appellant if he had leg injuries. As noted, supra, the slight grade in the road does not prevent it from being level, and there is no evidence that appellant had any leg injuries.
 {¶ 45} We hold that Off. Lumpkins, in performing the field sobriety tests at issue here, substantially complied with the NHTSA requirements, and that the trial court did not err in denying appellant's motion to suppress with respect to these tests.
 {¶ 46} For his second assignment of error, appellant asserts as follows:
 {¶ 47} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 48} When this case was called for a bench trial, appellant's counsel advised the court that he had prepared a jury demand, but that the clerk of court "possibly" made a mistake because it had not been filed. Counsel then requested a jury trial and a continuance, and the court denied both requests. Based upon the record before us, under Crim.R. 23, appellant's jury demand had to be filed by October 21, 2007. His failure to timely file a jury demand resulted in a waiver of his right to a jury trial. Id.
 {¶ 49} Appellant argues that his counsel was ineffective because he failed to investigate whether the jury demand had been filed, and that but for this failure, the *Page 14 
result would have been different in that he "would have proceeded by way of jury trail [sic] instead of pleading no contest."
 {¶ 50} The standard of review for ineffective assistance of counsel is whether the representation of trial counsel fell below an objective standard of reasonableness and whether the defendant was prejudiced as a result of the deficient performance. The defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial.Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 51} The Supreme Court in Strickland held: "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances. * * * Judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."Strickland, supra, at 688-689. There is a strong presumption that the attorney's performance was reasonable. Id. In the context of a guilty plea, the defendant must demonstrate that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart
(1985), 474 U.S. 52, 58-59; see, also, State v. Curd, 11th Dist. No. 2003-L-030, 2004-Ohio-7222, at ¶ 110.
 {¶ 52} This holding is equally applicable in the context of a no contest plea because in such case, as with a guilty plea, the defendant waives his right to trial. Crim.R. 11(B). Thus, in the context of a no contest plea, in asserting a claim of *Page 15 
ineffective assistance of counsel, the defendant must demonstrate that, but for his attorney's error, he would not have entered his no contest plea and instead would have insisted on going to trial.
 {¶ 53} This court considered a claim of ineffective assistance of counsel where trial counsel failed to file a jury demand in State v.Todaro, 11th Dist. No. 2004-A-0002, 2005-Ohio-3400. In that case, this court noted the defendant failed to establish either prong of theStrickland test. First, there was nothing in the record evidencing that the defendant had advised his attorney he wanted a jury trial. This court held that counsel's decision not to present appellant's case to a jury fell within an objective standard of reasonable representation in light of the sex offenses charged and the two young victims. Second, inTodaro, this court held the light sentence imposed and the fact that the defendant never inquired about a jury trial defeated his claim of prejudice.
 {¶ 54} Thus, failure of counsel to file a jury demand does not per se constitute ineffective assistance of counsel. Todaro, supra. The defendant must show that, but for counsel's failure to file a jury demand, he would have gone to jury trial and would not have entered the plea. State v. Madeline, 11th Dist. No. 2000-T-0156, 2002-Ohio-1332.
 {¶ 55} "A plea of guilty or no contest waives any prejudice a defendant suffers arising out of his counsel's alleged ineffective assistance, except with respect to a claim that the particular failure alleged impaired the defendant's knowing and intelligent waiver of his right to a trial." State v. Winterbotham, 2d Dist. No. 05CA100,2006-Ohio-3989, at ¶ 40.
 {¶ 56} A claim that a guilty or no contest plea was induced by ineffective assistance of counsel must be supported by evidence where the record of the guilty *Page 16 
plea shows it was voluntarily made. State v. Malesky (Aug. 27, 1992), 8th Dist. No. 61290, 1992 Ohio App. LEXIS 4378; see, also, State v.Kapper (1983), 5 Ohio St.3d 36. In Malesky, the court held:
 {¶ 57} "A naked allegation by a defendant of a guilty plea inducement, is insufficient to support a claim of ineffective assistance of counsel, and would not be upheld on appeal unless it is supported by affidavits or other supporting materials, substantial enough to rebut the record which shows that his plea was voluntary." Id. at *5.
 {¶ 58} In Kapper, the Supreme Court adopted the following rationale:
 {¶ 59} "`* * * [A]n allegation of a coerced guilty plea involves actions over which the State has no control. Therefore, the defendant must bear the initial burden of submitting affidavits or other supporting materials to indicate that he is entitled to relief. Defendant's own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review which shows that his plea was voluntary. * * *'" Id. at 38.
 {¶ 60} In State v. Wyley (Oct. 20, 1994), 8th Dist. No. 66163, 1994 Ohio App. LEXIS 4708, the defendant argued his guilty plea was involuntary due to ineffective assistance of counsel in that he pleaded guilty on his counsel's advice after being falsely told by counsel that his motions to suppress had been overruled. The court affirmed the conviction, finding that the defendant's allegations were not supported by affidavit or other materials substantial enough to rebut the record which showed his plea was voluntary. *Page 17 
 {¶ 61} The record below demonstrates that appellant's no contest plea was voluntarily made. He told the court that he intended to plea no contest to both charges. He stated he was not coerced into entering the plea. He acknowledged he was making his no contest plea of his own free will, knowingly, intelligently, and voluntarily. After the trial court fully informed appellant of his trial rights pursuant to Crim. R. 11, he waived those rights and entered his no contest plea.
 {¶ 62} Contrary to appellant's argument, there is no evidence in the record that appellant wanted a jury trial. Neither his motion to suppress, his attorney's statement to the court concerning the clerk's possible failure to have filed his jury demand, his attorney's statement that a jury was imperative, nor his attorney's assumption that there would be a jury trial provide any evidence that appellant himself wanted a jury trial.
 {¶ 63} Appellant argues his attorney had a duty to investigate whether the clerk had filed his alleged jury demand. Appellant cites State v.Bradley (1984), 42 Ohio St.3d 136 in support. However, appellant's reliance on that case is misplaced. In Bradley the defendant had argued his counsel was ineffective in the sentencing phase of his aggravated murder trial for failing to make any mitigation investigation.Bradley thus did not address an alleged duty of trial counsel to investigate his own acts of representation to make sure they had been done correctly. Appellant misconstrues an attorney's duty to investigate. That duty involves the search for facts to support his client's claims, see Bradley, supra, not for the attorney to make sure he has performed tasks which he is already professionally obligated to perform, such as filing a jury demand. The completion of such tasks is properly evidenced by obtaining *Page 18 
contemporaneous proof, such as a time-stamped copy, not by an attorney investigating his own conduct.
 {¶ 64} While appellant argues in his appellate brief that if his attorney had investigated whether his jury demand had been filed, he would have had a jury trial instead of pleading no contest, there is nothing in the record to support this argument. There is no evidence by affidavit or otherwise that appellant wanted a jury trial; that he communicated this desire to his attorney; or that appellant suffered any prejudice as a result of this failure. Because there is nothing in the record to demonstrate that appellant did not want to plea no contest, but instead wanted a trial, we cannot conclude that counsel's failure to investigate was deficient.
 {¶ 65} It is noteworthy that even after appellant's counsel advised the court in appellant's presence that counsel meant to file a jury demand, appellant entered a no contest plea. Appellant advised the court that he was entering his plea knowingly and voluntarily and that he had not been coerced. Appellant's comments to the trial court directly contradict any desire on his part for a jury trial. We therefore hold that trial counsel's conduct did not fall below an objective standard of reasonableness.
 {¶ 66} Further, appellant cannot meet the second prong of theStrickland test because he admitted he understood the terms of the plea and was satisfied with the representation of his counsel. Also, the trial court suspended all 180 days of appellant's sentence and $750 of his $1,000 fine. Moreover, there is no evidence that appellant ever advised his attorney he wanted a jury trial. Based upon this record, we cannot conclude that appellant was prejudiced from any alleged deficient conduct on the part of his counsel. *Page 19 
 {¶ 67} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Kent Division is affirmed.
 MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur. *Page 1