DECISION. *Page 2 
{¶ 1} Richard Baumgartner appeals his conviction for driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(d). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On February 18, 2006, two Arlington Heights firefighters alerted police that a red Mercury Cougar was driving erratically as it traveled south on Interstate 75. Within two minutes, Arlington Heights police officer Kyle McNary saw the car that the firefighters had described as "a possible OVI."
 {¶ 3} Officer McNary watched the car as it made multiple lane changes without signaling. At one point, the car crossed into the right lane without signaling, cutting in front of a postal truck. The driver of the postal truck was forced to apply the truck's air brakes and to swerve into the emergency lane.
 {¶ 4} Officer McNary stopped the car. When he approached the driver's side, he immediately noticed a strong odor of an alcoholic beverage emanating from inside the car. Officer McNary asked the driver, Baumgartner, to provide his license and proof of insurance. In response, Baumgartner handed him a purchase receipt from a retail store.
 {¶ 5} Officer McNary testified that he detected a strong odor of an alcoholic beverage coming from Baumgartner's mouth, and that his speech was "very extremely slurred." Also, Baumgartner had mustard smeared all over his shirt and pants.
 {¶ 6} Officer McNary asked Baumgartner to step to the rear of his car. Baumgartner was able to stand behind the car, but he rested his hand on the car several times.
 {¶ 7} Officer McNary asked Baumgartner if he would perform field-sobriety tests. Baumgartner said he did not want to do the field tests, but that he wanted "to *Page 3 
blow into the machine." Baumgartner stated, "I've only had two, three, four, five, six, seven beers."
 {¶ 8} Officer McNary handcuffed Baumgartner, read him hisMiranda rights, and transported him to the Evendale Police Department. A BAC DataMaster test determined the concentration of alcohol in Baumgartner's breath to be .140 grams by weight of alcohol per 210 liters of his breath.
 {¶ 9} Following the denial of his motion to suppress, Baumgartner entered a no-contest plea and was convicted. On appeal, Baumgartner now asserts in three assignments of error that the trial court erred by denying his motion to suppress.
 {¶ 10} Appellate review of a motion to suppress presents a mixed question of law and fact.[1] In considering a motion to suppress, the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses.[2] Consequently, we must accept the trial court's findings of fact if they are supported by competent and credible evidence.[3] With respect to the trial court's conclusions of law, however, we apply a de novo standard of review to decide whether the facts satisfy the applicable legal standard.[4]
 No Custodial Interrogation {¶ 11} First, Baumgartner argues that the trial court should have suppressed the statements he had made after the officer had ordered him out of his car, because the statements had been obtained in violation ofMiranda v. Arizona.[5] Baumgartner does not challenge the propriety of the traffic stop or the existence of probable cause to arrest him for driving under the influence of alcohol. *Page 4 
 {¶ 12} Miranda defined a custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[6] In determining whether a person was in custody for Miranda purposes, a court must make a two-part inquiry. First, the court must consider the circumstances surrounding the interrogation.[7] Next, the court must determine, in light of those circumstances, whether a reasonable person would have felt that he was not at liberty to leave.[8]
 {¶ 13} Generally, motorists temporarily detained during ordinary traffic stops are not in custody for purposes of Miranda.[9] Routine questioning of a motorist during a traffic stop does not automatically convert the detention into one involving a custodial interrogation.[10] But if a stopped motorist is subjected to treatment that renders him in custody for practical purposes, he is entitled to the protections spelled out in Miranda.[11]
 {¶ 14} In this case, the trial court properly concluded that Baumgartner was not in custody at the time he admitted to drinking numerous beers. At that time, Baumgartner had been standing at the rear of his car, and he had not been handcuffed. Baumgartner's statements occurred following the officer's routine question with respect to field-sobriety tests.
 {¶ 15} Under these circumstances, a reasonable person in Baumgartner's position would have understood that he was not in police custody. Consequently, *Page 5 
Baumgartner's statements to Officer McNary were not obtained in violation of Miranda. We overrule the first assignment of error.
 Compliance with Breath-Test Regulations {¶ 16} In his second and third assignments of error, Baumgartner argues that the trial court should have suppressed the breath-test results because the state did not present evidence that it had complied with Ohio Adm. Code 3701-53-04(A)(1) and (C).
 {¶ 17} Baumgartner's motion to suppress was basically a recapitulation of the language of the Ohio Administrative Code sections relevant to testing for alcohol or drugs. While his shotgun motion was particular enough to warrant a hearing, it lacked any factual basis sufficient to challenge specific aspects of the breath test.[12]
 {¶ 18} Baumgartner's motion to suppress contained no facts to support its general allegations that the state had violated administrative regulations in administering the breath test. Indeed, Baumgartner would have been hard-pressed to have presented sufficient factual support, given that he did not request discovery from the state before filing the motion to suppress.[13] And even though he had been subjected only to a breath-alcohol test, Baumgartner's motion asserted that the state had failed to comply with administrative regulations that pertained solely to non-breath testing, specifically to the testing of blood, urine, and other bodily substances. As a result of Baumgartner's failure to point to facts indicating that the administrative regulations had been violated in a particular way, the state's burden to show substantial compliance with the regulations remained general.[14] *Page 6 
 {¶ 19} Ohio Adm. Code 3701.53-04(A)(1) requires that a senior operator conduct a radio-frequency-interference, or RFI, check "using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced."
 {¶ 20} In this case, Officer McNary was in the room while Evendale police officer Steven Roach administered Baumgartner's breath test. At that time, Officer McNary had with him a radio issued by the Arlington Heights Police Department.
 {¶ 21} Baumgartner argues that the state had not substantially complied with Ohio Adm. Code 3701.53-04(A)(1) because the state presented no evidence that an RFI check of the instrument at the Evendale police station had been done with a radio from the Arlington Heights Police Department. But as we said in State v. Davis, "[t]he regulation does not require that the police department conduct an RFI check with every radio that could have potentially been used in the police department."[15]
 {¶ 22} The state presented testimony by Evendale senior operator Kevin Wedig that, in performing the weekly instrument check of the breath-testing machine, he had performed an RFI check using a hand-held radio normally used by the Evendale Police Department. According to Officer Wedig, the instrument had detected RFI and aborted the test, which indicated that the instrument's RFI detector was functioning properly.
 {¶ 23} Officer Wedig testified that the Evendale and Arlington Heights Police Departments utilized the same radio system in that both agencies were dispatched through the Hamilton County Communication Center. According to Officer Wedig, *Page 7 
the RFI detector would have aborted Baumgartner's breath test had it detected a radio transmission from a radio frequency used by the county radio system. The state also introduced into evidence the test result printout from the RFI check.
 {¶ 24} Under these circumstances, we hold that the state established substantial compliance with Ohio Adm. Code 3701.53-04(A)(1). We overrule the second assignment of error.
 {¶ 25} Baumgartner also argues that the state failed to demonstrate that it had substantially complied with Ohio Adm. Code 3701.53-04(C). That section provides in part, "After first use, instrument check solutions shall be kept under refrigeration when not being used. The instrument check solution container shall be retained for reference until the instrument check solution is discarded." According to Baumgartner, the state did not prove that the check-solution container had been retained until the solution was discarded.
 {¶ 26} Contrary to Baumgartner's assertions, the state presented testimony that the solution container had been retained with the solution while the solution was in use by the Evendale Police Department. Specifically, Officer Wedig testified that the solution had been sealed in its original container and kept under refrigeration while in use. And Baumgartner did not challenge this testimony on cross-examination. Under these circumstances, we hold that the state demonstrated that it had substantially complied with Ohio Adm. Code 3701.53-07(C). We overrule the third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
PAINTER, P.J., and CUNNINGHAM, J., concur.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[2] State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
[3] State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
[4] Burnside, supra, at ¶ 8.
[5] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[6] Id. at 444.
[7] Thompson v. Keohane (1995), 516 U.S. 99, 112, 116 S.Ct. 457.
[8] Id.
[9] See Berkemer v. McCarty (1984), 468 U.S. 420, 440,104 S.Ct. 3138.
[10] See State v. Polen, 1st Dist. Nos. C-050959 and C-050960,2006-Ohio-5599, at ¶ 11; Berkemer, supra.
[11] Berkemer, supra, at 440; State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255, 849 N.E.2d 985, certiorari denied sub nom. Ohio v.Farris (2007), ___ U.S. ___, 127 S.Ct. 1371.
[12] Norwood v. Kahn, 1st Dist. Nos. C-060497, C-060498, and C-060499,2007-Ohio-2799, jurisdictional motion overruled, 115 Ohio St.3d 1474,2007-Ohio-5735, 875 N.E.2d 628.
[13] See id. at ¶ 9.
[14] Id., syllabus.
[15] 1st Dist. Nos. C-060867 and C-060868, 2007-Ohio-4602. *Page 1