OPINION
{¶ 1} The state of Ohio appeals the decision of the Mason Municipal Court to suppress evidence of breath-alcohol and field testing in a DUI case. We affirm in part and reverse in part.
 {¶ 2} On April 18, 2003, State Trooper Jeffrey Staples was in the vicinity of Socialville-Foster Road in Deerfield Township when he observed appellee, David Ray Embry, operating a motor vehicle without a front license plate. Trooper Staples stopped appellee's vehicle and, during the stop, appellee stated that he had consumed one beer. Trooper Staples noted a very strong odor of alcohol, and he observed that appellee's eyes were bloodshot and glassy. At that point, Trooper Staples asked appellee to exit the vehicle and submit to field sobriety testing.
 {¶ 3} Appellee performed the Horizontal Gaze Nystagmus test ("HGN"), the walk and turn, the one-leg stand, and a portable breath test. At the conclusion of the tests, Trooper Staples placed appellee under arrest for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and operating a vehicle with a prohibited alcohol concentration in violation of R.C. 4511.-19(A)(3). Appellee was then transported to a highway patrol post where he was given a Breathalyzer test that indicated he had an alcohol content of .146 grams per 210 liters of breath.
 {¶ 4} Appellee filed a very general motion to suppress evidence, and, on July 27, 2003, a hearing was held to determine the admissibility of Trooper Staples observations, field-testing, the Breathalyzer test, and to determine whether probable cause existed to arrest appellee for DUI. After the hearing, the trial court ruled the state would not be permitted to present evidence regarding appellee's breath-alcohol content or evidence of the HGN test. The trial court did find, however, that probable cause existed to arrest appellee for DUI even without the HGN and Breathalyzer tests.
 {¶ 5} On appeal, the state raises two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "The trial court erred in granting appellee's motion to suppress the results of the breathalyzer test."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "The trial court erred by granting appellee's motion to suppress the results of the hgn test."
 {¶ 10} Crim.R. 47, which governs motions in criminal proceedings, provides that a motion "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." The Ohio Supreme Court has analyzed the requirements of this rule as they relate to motions to suppress evidence of DUI arrests in State v. Shindler,70 Ohio St.3d 54, 1994-Ohio-452. In Shindler, the Court held that in order to be entitled to a hearing on a motion to suppress evidence, a defendant "must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." Id. at paragraph one of the syllabus.
 {¶ 11} Once a defendant satisfies the initial burden of giving the prosecutor and the court sufficient notice of the issues to be determined at a hearing on a motion to suppress, the burden of going forward with evidence shifts to the state. Cityof Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218. When the issues to be determined at the hearing include whether the state has properly complied with the Ohio Administrative Code regulations governing Breathalyzer tests, the burden on the state is to show substantial compliance with the regulations. State v.Plummer (1986), 22 Ohio St.3d 292, 295. When the state shows substantial compliance with the relevant regulations, the results of Breathalyzer tests may be admitted into evidence unless the accused shows that he was prejudiced by less than strict compliance. Id.
 {¶ 12} This court, in State v. Johnson (2000),137 Ohio App.3d 847, analyzed to what degree the burden of production rests upon the state once a defendant has become entitled to a hearing on a motion to suppress. When the defense has met its initial burden of putting the prosecutor and the court on notice, the burden of production shifts to the state to show compliance at the hearing "to the extent that the defendant takes issue with the legality of the test." Id. at 851. "When a defendant's motion to suppress raises only general claims, along with Administrative Code sections, the state is only required to demonstrate, in general terms, that it substantially complied with the regulations." Id.
 {¶ 13} With respect to the Breathalyzer test results, appellee's motion contended, among other things, that the individual administering the test on appellee was not authorized; the individual did not conduct the test in accordance with the appropriate time limitations; and the individual did not obtain a proper breath sample from appellee. The motion also alleged an authorized senior operator did not conduct a proper instrument check with an authorized testing solution, and with the proper radio equipment, at least once every seven days.[1]
 {¶ 14} Although broad and sweeping, appellee's motion raised the foregoing issues with sufficient particularity to put the prosecutor and the court on notice that appellee wished to generally challenge the maintenance, calibration, and testing procedures related to the Breathalyzer test on the night of appellee's arrest. Appellee therefore, pursuant to Shindler,
adequately raised the issues concerning the Breathalyzer test.
 {¶ 15} At the hearing, the state called Trooper Staples and Sergeant Mark Helsinger to testify concerning the maintenance of the Breathalyzer machine and the administering of appellee's test. The permits, checklists, and certificates needed for conducting Breathalyzer testing in compliance with the Health Department regulations were also offered into evidence.
 {¶ 16} Trooper Staples testified that he was a senior operator on the date of appellee's arrest. He testified that he observed appellee for at least 20 minutes prior to administering the test. He also stated that he followed an operational checklist as he went through the testing sequence. The checklist indicates that Trooper Staples observed appellee for 20 minutes, took a breath sample, then recorded the results.
 {¶ 17} Sergeant Helsinger testified that he was also a senior operator in good standing. He obtained the solution he used to calibrate the Breathalyzer machine from the Health Department, and he conducted an instrument calibration check on April 13, 2003 (five days prior to the date when appellee's test was administered). He testified that he followed the Breathalyzer machine's operational checklist when conducting the calibration check and that the check produced a reading within the tolerance range specified in the Department of Health regulations. The checklist indicates that Sergeant Helsinger conducted an RFI check in which he transmitted using a hand-held radio. Sergeant Helsinger also testified that he follows the Health regulations and maintains a logbook, keeps records over the required time periods, and that the solution he used for the calibration check was properly refrigerated.
 {¶ 18} Based upon the hearing and oral and written argument, the trial court ruled to grant appellee's motion to suppress the results of the Breathalyzer test.
 {¶ 19} The decision to grant a motion to suppress is a mixed question of law and fact. State v. Burnside,100 Ohio St.3d 152, 154, 2003-Ohio-5372. On review, this court must accept the trial court's findings of fact as long as they are supported by competent, credible evidence. We then determine de novo whether the trial court has correctly applied those facts to the appropriate legal standard. Id. at 155.
 {¶ 20} In this case, the written decision of the court below does not state the court's findings of fact, only its legal conclusions. Therefore, we find that, taken as a whole, the testimony of Trooper Staples and Sergeant Helsinger, and the checklists, certificates, and permits admitted into evidence by the state, satisfied the burden of production that appellee's motion placed upon the state. The state showed substantial compliance with the requirements of administering a Breathalyzer test "to the extent [appellee took] issue with the legality of the test." Johnson, 137 Ohio App.3d at 851.
 {¶ 21} Appellee contends on appeal that because he raised specific issues in his motion that were not addressed by the prosecutor at the hearing, we should, consistent with Johnson,
overrule the state's first assignment of error. According to appellee, he specifically alleged in his motion that the state failed to show any evidence: (1) that a senior operator performed an instrument check no less frequently than once every sevendays; (2) that a senior operator performed the RFI check on the Breathalyzer machine using a hand-held radio normally used bythe department; and (3) that the air used during appellee's test was alveolar (deep lung) air. Therefore, appellee contends, the state did not meet its burden of production at the hearing.
 {¶ 22} Appellee seems to argue that because his motion statedverbatim that the state failed to conduct an RFI test with aradio normally used by the department, the state was required to respond verbatim, through testimony or other evidence, that the RFI test was conducted with a radio normally used by thedepartment.
 {¶ 23} We disagree. This line of thinking would place precisely the kind of onerous burden on the prosecution we sought to avoid in Johnson. In Johnson, this court criticized the appellant for merely citing to Administrative Code sections and claiming the state failed to follow them. We then indicated that in order to place more of a burden on the prosecution than the minimum, appellant would need to raise specific issues "in detail." 137 Ohio App.3d 852.
 {¶ 24} In Johnson this court indicated that a defendant could increase the burden of production on the state by specifically referring to the regulations alleged to have been violated rather than merely citing to their reference numbers. However, merely typing out the code provisions rather than citing to their reference numbers does not, in and of itself, create a burden on the state beyond merely responding in general to the issues raised. If a criminal defendant wishes to increase the burden on the prosecution to something beyond merely responding in general, the issues raised must have some specific factual basis to support them.
 {¶ 25} In State v. George (1994), 98 Ohio App.3d 371, one issue on review was whether the accused was kept in view by the arresting officer for the required 20 minutes prior to conducting breathalcohol testing. The Health regulations require that a test subject not ingest anything for 20 minutes prior to submitting to a Breathalyzer test. See Ohio Adm. Code 3701-53-02. The arresting officer in George testified that although the accused was in his vehicle and handcuffed for 20 minutes, he did not have his eyes on him at every moment. We held that a mere assertion that ingestion during the 20 minute period was hypothetically possible, without more, did not render the test results inadmissible. Id. at 377.
 {¶ 26} We believe this principle applies equally to every health regulation. Once the state has produced enough evidence at the hearing on a motion to suppress to create a reasonable inference that the regulation at issue was properly followed, the accused must do more than merely assert that it is hypothetically possible some more specific aspect of the regulation was not followed. The accused must have a factual basis for the assertion.
 {¶ 27} One way this factual basis can be obtained is during cross-examination at the hearing on the motion. A defendant who files a boilerplate motion with a bare minimum factual basis will need to engage in cross-examination if he wishes to require the state to respond more than generally to the issues raised in the motion. Furthermore, merely asserting during cross-examination that the possibility exists that a very specific aspect of the regulation was not followed, without a factual basis to support the assertion, will not increase the burden on the state.
 {¶ 28} Another, and in our view the best, way to obtain a specific factual basis that will increase the burden on the state to respond is by conducting formal discovery. In State v.Neuhoff (1997), 119 Ohio App.3d 501, 506, the Fifth District held that in order to put the state on notice of the issues to be challenged at a hearing with sufficient particularity, a defendant must first complete due and diligent discovery on those issues.
 {¶ 29} We hold that in order to require the state to respond specifically and particularly to issues raised in a motion, an accused must raise issues that can be supported by facts, either known or discovered, that are specific to the issues raised. Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight.
 {¶ 30} In the case at bar, appellee filed a very general, boilerplate motion to suppress that alleged few facts to support the issues raised therein. In essence, appellee stated in his motion that he was stopped for a traffic violation and that during the stop, the state did not obtain probable cause to arrest him for DUI. He also alleged the state violated numerous Department of Health regulations governing the administering of Breathalyzer tests. He did not, however, cite to any facts specific to this case to support his allegations that the state failed to follow the regulations governing Breathalyzer tests.
 {¶ 31} During cross-examination at the hearing on the motion, the only specific issue appellee raised with respect to the Breathalyzer test was whether the certificate from the Department of Health approving the Breathalyzer instrument check solution was properly authenticated. The state offered into evidence an uncertified copy of the certificate. We held in Johnson that an uncertified copy of a calibration solution certificate meets the prosecution's burden of showing substantial compliance.137 Ohio App.3d at 854. It was therefore incumbent upon appellee to show that he was prejudiced by the state's failure to produce a certified copy of the calibration solution certificate. Nothing in the record indicates that appellee did so.
 {¶ 32} Thus, with respect to the Breathalyzer test, we find that the state met its burden regarding the one specific issue raised by appellee. The other general allegations in the motion were sufficiently addressed by the general testimony of Trooper Staples and Sergeant Helsinger, and the certificates, checklists, and permits offered into evidence by the state.
 {¶ 33} For all the foregoing reasons, the state's first assignment of error is sustained.
 {¶ 34} Turning now to the second assignment of error, appellee's motion alleged, with respect to the HGN test, that the officer conducting the test did not give the proper instructions or properly comply with the National Highway Traffic Safety Administration ("NHTSA") procedures and guidelines.[2]
 {¶ 35} At the hearing on the motion, the state was required to demonstrate by clear and convincing evidence that the HGN test was administered in substantial compliance with standardized testing procedures such as those established by the NHTSA. See R.C. 4511.-19(D)(4)(b); State v. Schmitt, 101 Ohio St.3d 79,82, 2004-Ohio-37.[3]
 {¶ 36} Trooper Staples testified at the hearing that he received training in performing field sobriety tests from the NHTSA, and that he followed their guidelines when he performed the HGN test on appellee. During cross-examination, however, appellee was able to show that Trooper Staples deviated significantly from those guidelines when he conducted the HGN test on appellee.
 {¶ 37} After giving the appropriate instructions to a test subject, the NHTSA guidelines instruct the examiner to conduct the actual test in three phases. First, the examiner is instructed to have the subject focus on a stimulus while the examiner moves the stimulus from left to right. While moving the stimulus, the examiner checks for smooth pursuit of the test subject's eyes. The examiner then tracks each eye again, checking for horizontal nystagmus at maximum deviation. Finally, the examiner tracks each eye from left to right while looking for the onset of nystagmus before the eye has tracked 45 degrees.
 {¶ 38} The NHTSA guidelines list certain approximate and minimum time requirements for the various portions of the three phases of the exam. For instance, when checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. When checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds. When checking for the onset of nystagmus prior to 45 degrees, the time for tracking left to right should also be approximately four seconds.
 {¶ 39} The guidelines do not state a total minimum amount of time required for properly conducting all three phases of the exam. However, appellee was able to demonstrate at the hearing that the total amount of time Trooper Staples used to conduct the HGN test was significantly less than the NHTSA guidelines would appear to allow.
 {¶ 40} During the cross-examination of Trooper Staples, appellee added up all the approximate and minimum times called-for in the guidelines. He then compared that total time to the total time that elapsed on the video that recorded appellee performing the HGN test. A comparison of the two total times revealed that the total time Trooper Staples used to conduct the HGN test on appellee fell significantly short of the total of all the time requirements listed in the guidelines.[4]
 {¶ 41} The NHTSA guidelines also require the test examiner, while administering the HGN test, to hold the stimulus used for the exam (in this case the tip of a pen) approximately 12 to 15 inches from the test subject. Trooper Staples' testimony on cross-examination indicated he likely held the pen significantly closer to appellee than the minimum 12 inches.
 {¶ 42} In this case, we find that these deficiencies in the administration of the HGN test amount to a lack of substantial compliance with the NHTSA guidelines. The state's second assignment of error is therefore overruled.
 {¶ 43} The decision of the trial court to grant appellee's motion to suppress the results of the Breathalyzer test is reversed, and the trial court's decision to grant appellee's motion to suppress evidence of the HGN test is affirmed. Therefore, appellee's motion to suppress is affirmed in part and reversed in part, and we remand for further proceedings according to law and consistent with this opinion.
Young, P.J., concurs.
Valen, J., concurs in part and dissents in part.
[1] The specific wording of the motion, in relevant part, is as follows: "The individual administering the Defendant's test for drugs and/or alcohol did not conduct the test in accordance with the time limitation and regulation of the State of Ohio in R.C.4511.19(D) requiring that the defendant's blood, breath, urine, or other bodily substance be `withdrawn within two hours of the time of the alleged violation,' and the Ohio Department of Health governing such testing and/or analysis, as set forth in OAC 3701-53-01, 02, 03, 04, 05, 06 of the Ohio Administrative Code, including the operator's instructions issued by the Ohio Department of Health included in the appendices of OAC 3701-53-01, 02, 03, 04, 05, 06. The machine or instrument analyzing Defendant's drug and/or alcohol level was not authorized in accordance within the manner required by OAC 3701-53-01, OAC 3701-53-02, OAC 3701-53-03, OAC 3701-53-04, requiring: `[a] senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist * * *. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.' An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the Director of Health.' The instrument check required by the OAC was at or within five one-thousandths (.005) grams per two hundred ten liters of the target value for that instrument check solution. That the instrument check solution was not used more than three months after its date of first use. That the instrument check solution was not used after the manufacturer's expiration date, but in no event more than three years after its date of manufacture, notwithstanding the manufacturer's expiration date. That the instrument was checked for RFI using a hand-held radio normally used by the law enforcement agency. That the calibration/instrument check solution was kept under refrigeration after first use and when not being used, and that the solution container has been retained for reference until the calibration solution is discarded. And, that results of instrument checks, and records of maintenance and repairs have been retained for not less than three years in accordance with paragraph (A) of rule 3701-53-01 of the OAC. That the operational manual provided by the instrument's manufacture is on file in the area where the breath tests are conducted, pursuant to rule 3701-53-01 of the OAC. The air that was tested for purposes of determining whether Defendant had a prohibited breath alcohol concentration was not alveolar air as required by 3701-53-02(B). The lab operator was not licensed to operate the instrument analyzing Defendant's drug and/or alcohol level nor was the operator currently licensed to operate the instrument in accordance with OAC 3701-53-07, 08, 09."
[2] The exact wording of the motion is as follows: "While administering the horizontal gaze nystagmus, the officer did not administer the following required instructions: `I am going to check your eyes.' `Keep your head still and follow this stimulus with your eyes only.' `Keep following the stimulus with your eyes until I tell you to stop.' And, the officer did not strictly comply with the procedures for the horizontal gaze nystagmus as set forth in chapter VIII of the 1991, 1995 or 2000 edition of the National Highway Traffic Safety Administration DWI Detectionand Standardized Field Sobriety Testing: Student Manual."
[3] Under State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212, the standard for properly conducting field sobriety tests was strict compliance. In 2003, however, the General Assembly amended R.C. 4511.19. The standard now is substantial compliance.
[4] The record on appeal does not include the video recording of the field-testing conducted on appellee. However, the transcript of the hearing fully covers the issues on appeal.