[Cite as *State v. Dugan*, 2013-Ohio-447.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-04-081 |
| | : | O P I N I O N |
| - vs - | | 2/11/2013 |
| | : | |
| LAUREN DUGAN, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. 11TRC01119

Michael T. Gmoser, Butler County Prosecuting Attorney, Donald R. Caster, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellant

Jeffrey C. Meadows, 8310 Princeton-Glendale Road, West Chester, Ohio 45069, for defendant-appellee

**YOUNG, J.**

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals an order of the Butler County Area III Court granting a motion to suppress filed by defendant-appellee, Lauren Dugan. For the reasons stated below, we reverse the decision of the trial court.

{¶ 2} On March 12, 2011, Dugan was pulled over for a center line violation. After a series of sobriety tests, Dugan was arrested for operating a vehicle while under the influence

of alcohol. Dugan was transported to the West Chester Police Department where she took a breath-alcohol-content (BAC) test on the Intoxilyzer 8000. The Intoxilyzer printed out a Subject Test Report which indicated that "Subject Sample 1" had a result of .171 and "Subject Sample 2" had a result of .175. Dugan was then charged with operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(h).

{¶ 3} Dugan pled not guilty to the charges and filed a motion to suppress. The trial court held a hearing regarding the motion to suppress on September 9, 2011, and November 4, 2011. On the first day of the suppression hearing, the state presented two witnesses. The first witness was Mary Martin, the Ohio Department of Health (ODH) program administrator of alcohol and drug testing. Martin explained that she is "in charge of doing all of the policies and procedures and reviewing the rules" for ODH and has been trained regarding the construction and operation of the Intoxilyzer 8000. During her testimony, Martin explained the meaning of terms found on various ODH documents. One of these documents was Dugan's Subject Test Report printed out from the Intoxilyzer. Martin explained that the Subject Test Report showed that the Intoxilyzer took two "subject samples" of Dugan's breath. On cross-examination, Martin was questioned regarding the meaning of "sample attempt" as used in the ODH documents. Martin explained that "sample attempt" refers to the number of times a person blows into the Intoxilyzer.

{¶ 4} West Chester Police Officer Michael Lopez also testified regarding his involvement in the case. Lopez stopped Dugan for a center line violation, and administered both the field sobriety tests and the breath test on the Intoxilyzer 8000. Lopez stated that he recalls Dugan giving two breath samples into the Intoxilyzer that night. Additionally, Lopez noted that the Subject Test Report showed that Dugan gave two samples of breath into the Intoxilyzer. He explained that during the breath tests, the Intoxilyzer 8000 produces an

audible tone when a person is blowing into the machine correctly. An interruption in the audible tone will occur if the person stops blowing into the machine. Lopez stated that during Dugan's test he did not remember any interruptions in the audible tone and that there was no indication from the Intoxilyzer that she did not give an accurate sample.

{¶ 5} On cross-examination, defense counsel presented Officer Lopez with a document that contained details of Dugan's breath tests from the ODH website. The ODH website collects and stores information obtained by the Intoxilyzer on a central database. The document indicated that the Intoxilyzer recorded three "sample attempts" during Dugan's first blow into the machine. Officer Lopez testified that he did not observe multiple attempts at a valid sample collection for the first sample nor did he hear any interruption in the audible tone during Dugan's breath tests. Lopez stated that the document was not consistent with what he observed.

{¶ 6} After Officer Lopez's testimony, the hearing was continued so that the state could recall Martin regarding the alleged discrepancy between the ODH document and the observations from Officer Lopez. On the second day of the suppression hearing, Martin explained that the ODH website document contains more information about the breath test than the Subject Test Report and the Subject Test Report does not include information about sample attempts. She stated that as recorded on the ODH website document, "sample attempt" refers to how many times air has been put into the breath hose during the attempt. Therefore, any air that gets pushed into the mouthpiece counts as a sample attempt. Thus, there could be multiple sample attempts even though an individual has not removed the hose from her mouth. The machine registers these attempts without giving any audible tone, so the officer administering the test might be unaware that the instrument had recorded a sample attempt.

{¶ 7} On March 20, 2012, the trial court partially granted Dugan's motion to suppress

the breath-test result reasoning that the Intoxilyzer 8000 was flawed when used to measure Dugan's BAC. The court overruled Dugan's motion to suppress regarding all other issues.

{¶ 8} The state now appeals, asserting a sole assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN SUPPRESSING THE RESULTS OF THE BREATH TEST TAKEN BY DEFENDANT-APPELLEE.

{¶ 10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Eyer*, 12th Dist. No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. In turn, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Lange*, 12th Dist. No. CA2007-09-232, 2008-Ohio-3595, ¶ 4. After accepting the trial court's factual findings as true, the appellate court must then determine, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. *State v. Dierkes*, 12th Dist. No. 2008-P-085, 2009-Ohio-2530, ¶ 17.

{¶ 11} We initially consider the parties' disagreement over whether the state's appeal is proper under Crim. R. 12(K) and R.C. 2945.67. We then consider whether the court erred in suppressing the BAC test results and the trial court's role in determining the admissibility of BAC test results.

**Propriety of Appeal**

{¶ 12} We begin by addressing whether the state's appeal is proper under Crim.R.12(K) and R.C. 2945.67. Dugan argues the state's appeal is improper because the state failed to establish that it is unable to proceed with the prosecution due to the trial court's suppression of the BAC test results.

{¶ 13} R.C. 2945.67(A) allows a prosecutor in a criminal case to appeal as a matter of right a decision of a trial court to suppress evidence. *State v. Matthews*, 81 Ohio St.3d 375, 377-378 (1998). Crim.R. 12(K) states in part:

> [w]hen the state takes an appeal as provided by law from an order suppressing evidence * * * the prosecuting attorney shall certify that both of the following apply:
>
> (1) the appeal is not taken for the purpose of delay;
>
> (2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed * * *.

{¶ 14} An appellate court is without authority to review a prosecutor's Crim.R. 12(K) (formerly Crim.R. 12(J)) certification that the granting of a motion to suppress has rendered the state's proof with respect to the pending charges so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed. *State v. Bertram*, 80 Ohio St.3d 281 (1997), paragraph two of the syllabus. Therefore, when a trial court grants a motion to suppress evidence and the prosecutor has filed a proper Civ.R. 12(K) certification, the appellate court does not have the discretion to decide whether to allow the appeal. *Id.* at 283.

{¶ 15} We find that the appeal is proper pursuant to R.C. 2945.67 and Crim.R. 12(K). In this case, the state was appealing the trial court's decision suppressing Dugan's Intoxilyzer 8000 test results. Thus, the state's appeal is a matter of right pursuant to R.C. 2945.67. Additionally, the prosecutor certified that the appeal was not taken for purposes of delay and, as a result of the trial court's decision, any reasonable possibility of effective prosecution with respect to Dugan's alleged violation of R.C. 4511.19(A)(1)(h) was destroyed. As noted above, once the prosecutor has certified that the trial court's decision suppressing the evidence renders the pending charges so weak that it destroys the state's case, we are

unable to review the decision.  Thus, we find this appeal proper.

**Admissibility of Intoxilyzer 8000 Test Results**

{¶ 16} Next, we address whether the trial court erred in suppressing the Intoxilyzer 8000 breath test results.  The parties dispute the trial court's role in determining the admissibility of BAC results from a breath testing instrument.  The state argues that Ohio Supreme Court jurisprudence prohibits a trial court from suppressing BAC results based on the general unreliability of the breath testing instrument or because of a malfunction of the specific machine.  Instead, a trial court may only suppress BAC results upon a showing of a violation of an ODH regulation.  In this case, the state contends that no ODH regulations were violated.

{¶ 17} Dugan responds by arguing that the trial court's evidentiary gatekeeping role along with the discretionary language in R.C. 4511.19 allows the court to suppress BAC results based on evidence that the instrument is unreliable.  Additionally, Dugan argues that two ODH regulations were violated.  Therefore, the court did not err in suppressing the test results.

{¶ 18} The Ohio General Assembly has addressed the admissibility of evidence from various alcohol-determinative-testing devices in R.C. 4511.19(D)(1)(b).  The statute provides:

> [i]n any criminal prosecution or juvenile proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * *at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation.
>
> * * *
>
> The bodily substance withdrawn under (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit * * *.

{¶ 19} Pursuant to R.C. 3701.143, the director of health shall determine the suitable

methods for breath-alcohol analysis. The Intoxilyzer 8000 has been approved as one of these breath-testing instruments. Ohio Adm.Code 3701-53-02(A)(3).

{¶ 20} In *State v. Vega*, 12 Ohio St.3d 185 (1984), the Ohio Supreme Court addressed whether an accused can use expert testimony to attack the general reliability of breath-testing instruments in light of R.C. 4511.19. The Court stated that by enacting R.C. 4511.19, the General Assembly acknowledged the wide acceptance of these machines and "legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. The Court reasoned that the statute represented "the necessary legislative determination that breath tests, properly conducted, are reliable * * * and that the common law foundational evidence has, for admissibility, been replaced by statute and rule * * *." *Id.* at 188-189. Therefore, "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id.* at 190.

{¶ 21} The Court went on to state that while an accused cannot challenge the general reliability of BAC machines, "[t]here is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed." (Citations omitted.) *Id.* at 189. The Supreme Court upheld this result as applying to per se OVI offenses a few months later. *State v. Tanner*, 15 Ohio St.3d 1, 6 (1984).

{¶ 22} This district and others have universally recognized that *Vega* prohibits a general attack on the reliability of breath testing instruments. *State v. Plunkett*, 12th Dist. No. CA2001-01-012, 2008-Ohio-1014, ¶ 29; *State v. Luke*, 10th Dist. No. 05AP-371, 2006-Ohio-2306, ¶ 22; *State v. Birkhold*, 5th Dist. No. 01CA104, 2002 WL 727154, *2 (April 22, 2002); *State v. Massie*, 2d Dist. No. 2007CA24, 2008-Ohio-1312, ¶ 15; *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 26. Additionally, some appellate courts have interpreted *Vega* and subsequent Ohio Supreme Court cases to prohibit suppression of BAC test results

based on any argument regarding the reliability of a breath testing instrument. *Plunkett* at ¶ 29; *Luke* at ¶ 31. *See Massie* at ¶ 16. Instead, the admission of BAC test results turns on substantial compliance with ODH regulations. *Id.*

{¶ 23} In *Luke*, the Tenth District found that the trial court erred when it suppressed BAC results. In suppressing the test results, the trial court reasoned that pursuant to its gatekeeping role in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), the results were inadmissible because they were not sufficiently reliable due to the malfunctioning of the testing instrument. *Id.* at ¶ 9. The Tenth District reversed the trial court and found that BAC results could not be suppressed because the machine "malfunctioned or was otherwise not in good working order at the time of the defendant's test * * *." *Id.* at ¶ 28.

{¶ 24} In so holding, the court reasoned that *Vega*'s prohibition against attacking the reliability of testing instruments includes barring challenges to the admissibility of BAC results because the instrument was not functioning properly. *Id.* at ¶ 22, 28. In support of this position, the court cited several Ohio Supreme Court cases which noted that "[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations." *Id.* at ¶ 23, quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 3 (1991). *See State v. French*, 72 Ohio St.3d 446, 451; *State v. Plummer*, 22 Ohio St.3d 292 (1986). Thus, "in the absence of any evidence that [ODH] regulations had not been followed, the test result was admissible, and the possible malfunctioning of the machine on the date of the defendant's test was irrelevant to admissibility." *Luke* at ¶ 28. This court agreed with this proposition in *Plunkett*, 12th Dist. No. CA2001-01-012, 2008-Ohio-1014, ¶ 29.

{¶ 25} Recently, the Eleventh District has issued a series of opinions discussing the ways a trial court can suppress BAC results. *State v. Miller*, 11th Dist. No. 2012-P-0032,

2012-Ohio-5585; *State v. Rouse*, 11th Dist. No. CA2012-P-0030, 2012-Ohio-5584; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583. In *Miller*, the court acknowledged that *Vega* prohibits defendants from attacking the general reliability of testing instruments. *Miller* at ¶ 25-26. Additionally, the court reasoned that pursuant to *Vega*, test results can be suppressed upon a showing of noncompliance with ODH regulations or evidence that the operator of the testing instrument was not qualified. *Miller* at ¶ 31. These findings are in line with this district's view. *Plunkett* at ¶ 29. However, the court went on to state that:

> [i]n addition to attacks on the specific performance of a particular breath test in an individual defendant's case [during trial], **a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons.** While as discussed above, the machine is presumed to be generally reliable, a defendant may raise specific issues related to reliability in a motion to suppress, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. (Emphasis added.)

*Miller* at ¶ 32.

{¶ 26} The court concluded that *Vega* does not circumvent the trial court's role as gatekeeper of the evidence because "a trial court still retains its authority and responsibility to regulate the admission of test results and to evaluate specific challenges to the Intoxilyzer's reliability." *Id.* at ¶ 33. Therefore, the Eleventh District held that there are three ways for a defendant to challenge the admissibility of BAC test results. In a motion to suppress, the defendant may argue: (1) ODH regulations were not followed, (2) the operator of the BAC instrument was not qualified, or (3) the BAC machine is not reliable because of specific reasons. *Miller* at ¶ 33.

{¶ 27} We decline to follow the Eleventh District's approach in allowing defendants to challenge the admissibility of a BAC test based on the unreliability of the specific machine. As noted above, *Vega* held that R.C. 4511.19 has replaced common law foundational evidence for the admissibility of BAC results by statute and legislatively determined that

these results are reliable. Allowing defendants to challenge the admission of BAC test results because of "specific issues" related to unreliability undercuts the legislative determination that BAC results, properly conducted, are reliable. We are also concerned regarding the wisdom in dividing reliability arguments into "specific" and "general" challenges. There is a narrow distinction between these challenges that might lead to a slippery slope of specific challenges to breath testing instruments that ultimately test what the Ohio General Assembly has already determined, namely, the general reliability of these instruments.

{¶ 28} Therefore, we interpret *Vega* to allow a defendant to challenge the admissibility of his BAC test results by arguing that, (1) ODH regulations were not followed, or (2) the operator of the BAC instrument was not qualified. However, a defendant may not challenge the admission of his BAC test based on specific issues that question the testing instrument's reliability. We note that although trial courts cannot suppress test results based on the unreliability of the machine, defendants are free to challenge the reliability of the specific testing procedure. Defendants "may endeavor to show something went wrong with his test and that, as a consequence, the result was at variance with what the approved testing process should have produced." *Luke* at ¶ 26, quoting *Columbus v. Day*, 24 Ohio App.3d 173, 174 (10th Dist.1985). However, these challenges go to the weight of the breath test results rather than its admissibility.

{¶ 29} During the suppression hearing, Dugan attempted to show that the Intoxilyzer 8000 was not reliable because of the discrepancy between the number of sample attempts recorded by the ODH website document and the number of breath samples Officer Lopez observed Dugan perform. In suppressing Dugan's BAC results, the trial court noted the inconsistency between Officer Lopez's testimony, the Subject Test Report, and the ODH document. Additionally, the court found that Martin's testimony did not explain this inconsistency. Thus, the court suppressed the BAC results because "the instrument that Ms.

Dugan blew into on the night of her arrest appeared to be flawed * * *." The court did not address whether any ODH regulation was violated. Consequently, to the extent that the trial court suppressed Dugan's test results based on evidence that the Intoxilyzer was unreliable, the court erred. Dugan's concerns over the reliability of her test results because of the discrepancy between the ODH report, the Subject Test Report, and the observations of Officer Lopez could be raised at trial and will affect the weight to be given the test results.

{¶ 30} Thus, because admission of BAC results turns on substantial compliance with ODH regulations, this court's next inquiry is whether any ODH regulation was violated. Dugan argues that the state failed to show that it has a system in place to retain breath test results for not less than three years in accordance with Ohio Adm.Code 3701-53-01(A). Additionally, Dugan argues that the state failed to establish that a dry gas control was performed before and after each time she blew into the Intoxilyzer in accordance with Ohio Adm. Code 3701-53-04(B).

{¶ 31} Pursuant to Crim.R. 47, a motion in a criminal proceeding "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." In order to be entitled to a hearing on a motion to suppress evidence, a defendant "must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *Plunkett*, 12th Dist. No. CA2007-01-012, 2008-Ohio-1014 at ¶ 10, quoting *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus.

{¶ 32} Once a defendant satisfies this initial burden and thereby places the prosecutor and the court on sufficient notice of the issues to be determined at the suppression hearing, the burden of proof shifts to the state. *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 220 (1988). When a defendant disputes the validity of a BAC test, the state has the burden to show that the test was administered in substantial compliance with ODH regulations. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372 at ¶ 24. Substantial compliance is limited to

excusing only deviations from the regulations that are "clearly de minimis," i.e., irregularities amounting to "minimal procedural deviations." *Id.* at ¶ 34. Once the state has satisfied this burden and created a presumption of admissibility, the burden shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. *Id.* at ¶ 24.

{¶ 33} However, the extent of the state's burden to show substantial compliance depends upon the level of specificity with which the defendant challenges the legality of the BAC test. When a defendant files a motion to suppress that provides factual bases *specific to the defendant's case* in support of his or her claims that a particular ODH regulation was not followed, the state must show substantial compliance with that ODH regulation. *State v. Deutsch*, 12th Dist. No. CA2008-03-035, 2008-Ohio-5658, ¶ 11. However, "[w]hen the language in the motion to suppress raises only general claims, even though accompanied by specific administrative code subsections, then there is only a slight burden on the state to show, in general terms, compliance with the health regulations." *State v. Jimenez*, 12th Dist. No. CA2006-01-005, 2007-Ohio-1658, ¶ 25.

{¶ 34} In order to raise the slight burden imposed upon the state by a general motion to suppress, a defendant must provide some factual basis in support of a claim that a particular ODH regulation was not followed. This court has suggested two methods for gathering facts in order to support such a claim. The first method to obtain facts to support a claim is during cross-examination at the suppression hearing. *State v. Embry*, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, ¶ 27. "A defendant who files a boilerplate motion with a bare minimum factual basis will need to engage in cross-examination if he wishes to require the state to respond more than generally to the issues raised in the motion." *Id.* Additionally, "merely asserting during cross-examination that the possibility exists that a very specific aspect of the regulation was not followed, without a factual basis to support the assertion, will

- 12 -

not increase the burden on the state." *Id.* The second method is "to obtain a specific factual basis that will increase the burden on the state to respond is by conducting formal discovery." *Id.* at ¶ 28.

{¶ 35} We will begin by determining whether the state showed substantial compliance with Ohio Adm.Code 3701-52-01(A). Ohio Adm.Code 3701-52-01(A) requires the state to retain breath test records for not less than three years. Initially, we note that the state's burden to show substantial compliance was slight because Dugan did not assert specific facts in her motion to suppress to show that the state does not retain breath test results for at least three years. One portion of Dugan's motion stated that "[t]he individual administering [Dugan's] test for drugs and/or alcohol did not conduct the test in accordance with the time limitation and regulations of the State of Ohio in R.C. 4511.19(D) and the [ODH] governing such testing and/or analysis, as set forth in *OAC 3701-52-01*, 02, 03, 04, 05, 06, 07, & 08 * * *." (Emphasis added.) Other than mentioning Ohio Adm.Code 3701-52-01 in this long list of alleged violations, Dugan's motion did not assert any other specific claims that ODH fails to retain breath test results for three years.

{¶ 36} Although Dugan's motion to suppress did not raise the state's burden, the state's burden can also be raised through cross-examination. At the suppression hearing, Martin testified that all the records from the Intoxilyzer are uploaded to the ODH website. She stated that the Intoxilyzer communicates with the ODH website and police can view the details of each subject test that was performed on the Intoxilyzer. On cross, defense counsel asked Martin whether there was any way to verify that every test result recorded by the Intoxilyzer has been uploaded to the ODH website. Martin responded by stating that there has been no failure of uploads from the instrument.

{¶ 37} We find that Dugan did not raise the state's burden of establishing substantial compliance through cross-examination. While Dugan questioned Martin regarding the state's

retention of records policy, Dugan was unable to obtain specific facts which showed that the regulation was not followed. As noted above, "merely asserting during cross-examination that the possibility exists that a very specific aspect of the regulation was not followed, without a factual basis to support the assertion, will not increase the burden on the state." *Embry* at ¶ 27. Further, while Dugan engaged in discovery, she was also unable to produce any facts to show that the state did not retain the records.

{¶ 38} The state met its slight burden of establishing substantial compliance with Ohio Adm.Code 3701-52-01(A). The state provided evidence that all records from the Intoxilyzer are uploaded to the ODH website. Although the state did not discuss the procedures for retaining these records, Martin stated that there has been no failures of uploads in the instrument. Thus, this testimony met the state's slight burden of establishing substantial compliance with Ohio Adm.Code 3701-52-01(A).

{¶ 39} Next, we address whether the state substantially complied with Ohio Adm.Code 3701-53-04(B). Dugan's motion contained specific language which alleged, "[t]he state failed to perform a dry gas control before and after every subject test as required by OAC 3701-53-04(B)." Because Dugan's motion specifically challenged the validity of the test results due to the state's alleged failure to perform a dry gas control before and after every subject test, the state had the burden to show that the test was administered in substantial compliance with the regulations by the ODH.

{¶ 40} Ohio Adm.Code 3701-53-04 specifies the calibration requirements for the Intoxilyzer 8000. The relevant portion of Ohio Adm.Code 3701-53-04(B) states, "[i]nstruments listed under paragraph (A)(3) of rule 3701-53-02 of the Administrative Code shall automatically perform a dry gas control test before and after every subject test * * *." The Intoxilyzer 8000 is listed as an approved testing device under Ohio Adm.Code 3701-53-02(A)(3). This court has recently interpreted this administrative code section to require a dry

gas control before a person's first blow into a breath testing machine and then a dry gas control after the last blow into the machine. *State v. Kormos*, 12th Dist. No. CA2011-08-059, 2012-Ohio-3128. In so holding, this court interpreted the phrase "subject test" to refer to each individual subject tested and not each separate time the subject blows into the instrument. *Id.* at ¶ 20. Therefore, the state was not required to prove that a dry gas control was performed before and after every separate blow, but instead before and after every individual tested. *Id.*

**{¶ 41}** At the suppression hearing, Officer Lopez testified that the Intoxilyzer performed a dry gas control before Dugan's first sample and after her second sample. Additionally, the Subject Test Report which recorded the calibration procedure used during Dugan's breath test, was introduced into evidence. The relevant portions of the Subject Test Report stated:

| Test | Time |
|------|------|
| * * * | |
| Dry Gas Control | 03:41 |
| * * * | |
| Subject Sample 1 | 03:42 |
| * * * | |
| Subject Sample 2 | 03:46 |
| * * * | |
| Dry Gas Control | 03:47 |
| * * * | |

**{¶ 42}** We find that the state established that it substantially complied with Ohio Adm. Code 3701-53-04(B). Contrary to appellant's argument, the state is not required to prove that a dry gas test was performed before and after every separate sample. Instead, a dry gas control must only be conducted before and after each subject is tested. The evidence established that a dry gas control was performed before and after Dugan's breath test.

**{¶ 43}** The state's sole assignment of error is sustained. The trial court's decision suppressing Dugan's Intoxilyzer 8000 BAC test results is reversed. This cause is remanded

for further proceedings consistent with this opinion.

S. POWELL, P.J., concurs.

RINGLAND, J., concurs separately.

**RINGLAND, J., concurring separately.**

{¶ 44} Based on the specific issues presented to us in this case I concur, particularly with the interpretation of *State v. Vega*, 12 Ohio St.3d 185 (1984). However, I realize that *Vega*, decided in 1984, may need to be revisited, and I urge the Ohio Supreme Court to do so.

{¶ 45} The commonly accepted interpretation of the *Vega* opinion is that once a breathalyzer machine is approved or deemed reliable by the Ohio Department of Health (ODH), courts are prohibited from receiving evidence disputing the reliability of the machine. R.C. 4511.19(D) permits courts to admit evidence on the concentration of alcohol in the defendant's breath, but that this bodily substance *shall* be analyzed in accordance with methods approved by the ODH. R.C. 4511.19(D) has therefore been interpreted to allow courts to receive evidence regarding the specific testing procedure and qualifications of the operator, but requires that courts accept the general reliability of ODH approved machines.

{¶ 46} The Intoxilyzer is the only scientific machine or process that does not require a judicial finding of reliability through expert evidence. Normally, once such finding is made through direct and cross-examination of experts, the court's finding may be taken notice of by courts under its jurisdiction per Evid.R. 205. The Ohio legislature has seen fit to usurp this judicial process by delegating this judicial power to the executive branch, i.e., the ODH. This provision of R.C. 4511.19(D) avoids the evidence-taking process of experts through direct and cross-examination, judicial fact finding and eventual judicial notice as set forth under the Rules of Evidence and as provided for under the Modern Courts Amendment to Article IV of

the Ohio Constitution. This is contrary to the courts' gatekeeping responsibility as set forth in *Daubert* and its Ohio progeny. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). *E.g., Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607 (1998); *State v. Williams*, 12th Dist. No. CA2007-04-087, 2008 Ohio 3729. Therefore, this usurpation may be constitutionally suspect. However, these issues were not raised below and hopefully will be resolved in another time and in another case.

{¶ 47} Constitutional issues aside, I am aware that courts have struggled with the interpretation of *Vega*. *E.g., State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585; *State v. Reid, et al*, Circleville M.C. Nos. TRC1100716, TRC1007193, and TRC1005965 (June 2, 2011). Courts have opined that much has changed since 1984. Per se violations of R.C. 4511.19 were added, often making the Intoxilyzer test the only evidence supporting a conviction. Different Intoxilyzer machines with arguably more complicated processes have subsequently been approved by the ODH. The United States and Ohio Supreme Courts, as discussed above, have become more sensitive to the courts' gatekeeping responsibilities. The Ohio Supreme Court has taken notice and ruled on the legislature's encroachment on courts' authority. *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424. Finally, few safeguards are available to the litigant should the current available process for determining reliability that is utilized by the ODH be flawed or suspect. Huey, *The OACDL Challenges the Intoxilyzer 8000 and the Department of Health Responds: Is this what they mean by Putting Lipstick on a Pig?* The OACDL Vindicator (Summer 2012) 9. These events signal a need for the Ohio Supreme Court to resolve these issues and confusion.

Young, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.